United States District Court
District of Massachusetts

```
_____
                             )
Renee Ellis,                 )
                             )
          Plaintiff,         )
                             )
     v.                      )     Civil Action No.
                             )     19-11224-NMG
North Andover Public Schools,)
                             )
          Defendant.         )
_____      )
```

MEMORANDUM & ORDER

GORTON, J.

This case arises out of the alleged discriminatory treatment and wrongful termination of Renee Ellis ("Ellis" or "plaintiff").  Ellis claims that her employer, North Andover Public Schools ("NAPS" or "defendant"), discriminated against her due to her diabetes-related disabilities, in violation of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101 et seq., and M.G.L. c. 151B, §§ 4(4A) & 4(16). Pending before the Court is the defendant's motion for summary judgment.

I.   **Background**

     A. Employment at NAPS and Health Issues

     Ellis began working for NAPS in 1998 as a cafeteria aide and a substitute teacher.  In 2003, she began working as a

- 1 -

Special Needs Teaching Assistant, also known as a paraprofessional, at North Andover Middle School ("NAMS"). Between the 2010-2011 school year and the 2014-2015 school year, Ellis was assigned to be the paraprofessional for sixth-grade students in the classroom of Aaron Drosdek ("Drosdek"), a special education teacher at NAMS.

In 2011, Ellis began experiencing vision issues related to her diabetes and was diagnosed with proliferative diabetic retinopathy.  Due to that condition, as well as related medical treatment, Ellis began to have difficulty reading fine print. As a result, she began using a handheld magnifying glass and received photocopies of written assignments with enlarged text from Drosdek.

During the 2014-2015 school year, Ellis had eye surgery and took a leave of absence for several months to recover.  In January, 2015, she provided a letter from her doctor to NAMS Principal Joan McQuade ("McQuade") clearing her to return to work with accommodations.  She returned to Drosdek's classroom for the remainder of the school year.

On September 1, 2015, McQuade informed Ellis that she was being reassigned to a seventh-grade special education class following the purported elimination of three paraprofessional positions from Drosdek's classroom.  After Ellis expressed her

concern about the reassignment due to her disability, McQuade asked Ellis to provide a doctor's note to understand what accommodation Ellis might need to perform her job.

Ellis subsequently provided McQuade with notes from two doctors, one dated September 15, 2015, and the other dated September 21, 2015.  The latter note suggested several accommodations, including that Ellis have access to large print materials, good lighting and writing or reading guides.  NAPS contends that McQuade organized a meeting with Ellis and the rest of the seventh-grade staff shortly thereafter to discuss accommodation for Ellis.  Both parties concede that McQuade spoke briefly to Ellis about the recommended accommodations, asking for clarification, and sent the doctor's note to NAPS' administrative personnel for further guidance.

Ellis was out of work for a few days and then later suffered a fracture in her left foot that led to a diagnosis of Charcot arthropathy, a diabetic condition which causes a weakening of the foot bones.  Treatment of that condition kept Ellis on medical leave, beginning October 13, 2015, for the remainder of the 2015-2016 school year.

On May 3, 2016, plaintiff sent McQuade a letter from her doctor stating that she would need to remain on medical leave for the remainder of the 2015-2016 school year but that she

should be able to return at the beginning of the following school year.

### B. Non-Renewal and Termination of Employment

On June 1, 2016, Ellis received a letter from NAPS notifying her that it would not renew her employment for the 2016-2017 school year.  Ellis requested a meeting to discuss her desire to return to work and submitted a note from a nurse practitioner, dated June 16, 2016, stating that she could return to work immediately with certain restrictions.

Ellis and her union representatives Ryan Landry ("Landry") and Tedi Winkler ("Winkler") met with McQuade and then-business administrator Jim Mealey ("Mealey") on June 22, 2016.  Landry and Winkler requested that NAPS rescind plaintiff's non-renewal notice, permit her to return to work with accommodations and place her in Drodek's classroom.  McQuade said that Ellis would not be able to return to her preferred position in Drodek's classroom but Mealey indicated the school district might be able to place her in another school.  The meeting ended without resolution.

After the meeting, NAPS agreed to rescind the non-renewal notice on condition that Ellis undergo an independent physician evaluation by a general practitioner of the district's choosing.

Neither Ellis nor her union representatives responded to that offer and her employment with NAPS was terminated.

### C. Procedural History

In May, 2019, Ellis filed suit in this Court asserting two counts against NAPS for failure to accommodate (Count I) and wrongful termination (Count II) in violation of the ADA, 42 U.S.C. § 12111 et seq., and M.G.L. c. 151B, § 4(16).

In March, 2021, NAPS filed the pending motion for summary judgment with respect to both claims.

## II.  Motion for Summary Judgment

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law...." Anderson v. Liberty Lobby,

Inc._, 477 U.S. 242, 248 (1986).  A genuine issue of material
fact exists where the evidence with respect to the material fact
in dispute "is such that a reasonable jury could return a
verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts
to the nonmoving party to set forth specific facts showing that
there is a genuine, triable issue. Celotex Corp. v. Catrett_,_ 477
U.S. 317, 324 (1986).  The Court must view the entire record in
the light most favorable to the non-moving party and make all
reasonable inferences in that party's favor. O'Connor v.
Steeves_,_ 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is
appropriate if, after viewing the record in the non-moving
party's favor, the Court determines that no genuine issue of
material fact exists and that the moving party is entitled to
judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

### B. Application

#### 1.    Failure to accommodate

As a preliminary matter, the Court notes that plaintiff's
memorandum in opposition to the defendant's motion for summary
judgment asserts that NAPS failed to provide reasonable
accommodations on three occasions: (1) when Ellis requested in
June, 2015 to remain in Drosdek's classroom for the 2015-2016
school year, (2) when she requested accommodations in September,

2015, and (3) in the summer of 2016 when she requested reassignment to Drosdek's classroom or another position for the following school year, with accommodations.  Plaintiff's complaint, however, contains no factual assertions or theories of liability regarding the alleged June, 2015 request.

It is well-settled that plaintiffs may not "raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment." Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 76 (1st Cir. 2016); accord. Tchankpa v. Ascena Retail Grp., Inc., 951 F.3d 805, 817 (6th Cir. 2020). Rather, the appropriate method by which to advance a new claim that arises out of discovery is to amend the complaint, as provided for under Fed. R. Civ. P. 15(a). See Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez, 659 F.3d 42, 53 (1st Cir. 2011) (citing Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir.2004)).  To do otherwise would subject defendants to unfair surprise at a late stage in the litigation.

In her complaint, Ellis bases her claim of failure to accommodate exclusively on events that occurred during and after the fall of 2015.  Nowhere in her original complaint did she address her alleged requests prior to that period, nor has she sought leave to file an amended complaint alleging such facts.

This new theory of liability is therefore not appropriately before the Court.

To prevail at the summary judgment stage for failure to accommodate on either of the two described occasions, Ellis must present sufficient evidence that, at the time of the alleged discrimination: (1) she was disabled within the ADA's definition, (2) she could perform the job's essential functions either with or without a reasonable accommodation, and (3) NAPS knew of her disability but failed to make a reasonable accommodation. See Audette v. Town of Plymouth, MA, 858 F.3d 13, 20 (1st Cir. 2017). If Ellis can meet all three of these elements, the burden shifts to NAPS to articulate a legitimate, non-discriminatory reason for its employment decision and to produce credible evidence to show that the reason advanced was the real reason. See generally Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 104 (1st Cir. 2007). If NAPS offers such a reason, the burden returns to Ellis, who must then provide evidence to establish that the defendant's non-discriminatory justification was mere pretext, cloaking discriminatory animus. See id.

The parties do not dispute that Ellis was disabled, as statutorily defined. Nor do defendants contend that she was unable to perform the essential functions of her job, with or

without accommodation.  Rather, the parties disagree about the
third element: whether NAPS reasonably accommodated Ellis'
disability.

> Federal regulations implementing the ADA state:
>
> To determine the appropriate reasonable accommodation
> it may be necessary for the covered entity to initiate
> an informal, interactive process with the qualified
> individual with a disability in need of the
> accommodation.  This process should identify the
> precise limitations resulting from the disability and
> potential reasonable accommodations that could
> overcome those limitations.

29 C.F.R. § 1630.2(o)(3).  Thus, an employee's request for
accommodation may create "a duty on the part of the employer to
engage in an interactive process." E.E.O.C. v. Kohl's Dep't
Stores, Inc., 774 F.3d 127, 132 (1st Cir. 2014) (quoting Enica
v. Principi, 544 F.3d 328, 338 (1st Cir. 2008)).  Both the
employer and the employee have an obligation to engage in this
process in good faith. See id.  The scope of the employer's
obligation is not, however, "crystal clear."  Tobin v. Liberty
Mut. Ins. Co., 433 F.3d 100, 108 (1st Cir. 2005) (quoting
Calero-Cerezo v. Dep't of Justice, 355 F.3d 6, 23-24 (1st Cir.
2004)).

Based on the facts alleged, Ellis' claim fails as a matter
of law.  Upon hearing that Ellis' disability would complicate
her new assignment, McQuade immediately initiated an interactive
dialogue concerning possible accommodations.  Between the date

of the doctor's note providing a list of possible
accommodations, September 21, 2015, and her extended absence,
only 16 workdays elapsed.  During that period, plaintiff
concedes that McQuade forwarded information regarding Ellis'
disability to NAPS personnel to seek additional guidance and had
a brief conversation with Ellis.

While "an unreasonable delay may amount to a failure to
provide reasonable accommodations," Callbeck v. Fallon Cmty.
Health Plan, Inc., 480 F. Supp. 3d 308, 314 (D. Mass. 2020), the
delay in this case was not unreasonable. See Marks v. Washington
Wholesale Liquor Co. LLC, 253 F. Supp. 3d 312, 324 (D.D.C.
2017), and cases cited ("[a] relatively short delay of a few
weeks (or even a few months)" does not typically support failure
to grant reasonable accommodation under ADA).  Nor does
plaintiff present evidence that NAPS impermissibly "stonewalled"
the dialogue required under the ADA. Calero-Cerezo v. U.S. Dep't
of Just., 355 F.3d 6, 25 (1st Cir. 2004).  McQuade initiated and
pursued communication with Ellis and it was plaintiff's own
circumstances, not defendant's delay, that ultimately
interrupted progress. See Enica v. Principi, 544 F.3d 328, 339
(1st Cir. 2008) ("an employer will not be held liable if it
makes reasonable efforts both to communicate with the employee
and provide accommodations based on the information it
possessed") (quotation and citation omitted).  A factfinder

could not reasonably conclude that the defendant failed to make a reasonable effort to respond to Ellis' disability during the short period under consideration.

Not can Ellis base her claim on the request made in June, 2016 to return to Drosdek's classroom or another position with accommodations.  NAPS did not renew Ellis' employment for the 2016-2017 school year and, according to the termination letter, her last day was June 22, 2016, the very day that she met with school officials to discuss her desire to return to work. Plaintiff therefore contends that NAPS had an obligation to make a reasonable accommodation, even though she was not scheduled to be employed by the defendant.  This Court is unaware of any caselaw to support such an assertion, and the plaintiff cites none.  Other courts have found that such requests are not properly viewed as requests for accommodation but rather as requests for reinstatement. <u>See</u> <u>Mole</u> v. <u>Buckhorn Rubber Prods., Inc.</u>, 165 F.3d 1212, 1218 (8th Cir.1999), cert. denied, 528 U.S. 821 (1999); <u>see also</u> <u>McDonald</u> v. <u>Town of Brookline</u>, 863 F.3d 57 (1st Cir. 2017) (district court did not abuse its discretion in declining to instruct jury that town had duty to engage in interactive process with employee post-termination and to use information learned after employee's termination to reasonably accommodate disability).  Ellis therefore cannot base her

failure to accommodate claim on requests regarding
accommodations after her termination.

### 2.    Wrongful termination

To establish her prima facie case for wrongful termination
based on disability discrimination under either federal or state
law, Ellis must present credible evidence that, at the time of
her termination: (1) she was handicapped within the meaning of
the statute, (2) she was qualified to perform the essential
functions of the job with or without reasonable accommodation,
(3) she was terminated or otherwise subject to an adverse action
by her employer, and (4) the position she occupied remained open
and the employer sought to fill it. Piccadaci v. Town of
Stoughton, 2019 WL 653146, at *2 (D. Mass. 2019) (citing Jacques
v. Clean-Up Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996); Dartt
v. Browning-Ferris Indus., Inc., 427 Mass. 1, 3 (1998)).  The
parties do not contest the first or fourth elements of this
claim.  Rather, they dispute only whether Ellis was qualified to
perform the essential functions of the job and whether she can
claim she was terminated because she never responded to the
defendant's offer to rescind her non-renewal notice on the
condition that she undergo an independent physician evaluation.

Plaintiff has presented sufficient credible evidence that
she was qualified to perform her job with or without

accommodation to survive defendant's motion for summary
judgment.  At the time of Ellis' termination, in June, 2016, the
latest information NAPS had regarding her medical condition was
a doctor's note dated May 3, 2016 indicating that, while Ellis
"should" remain out of work through the 2015-2016 school year,
she "should be able" to return at the beginning of the following
school year.  Contrary to defendant's assertion, that does not
amount to a request for an indefinite leave because there was an
expected end date.  See Fiumara v. President & Fellows of
Harvard Coll., 327 F. App'x 212, 213 (1st Cir. 2009) (finding
indefinite leave unreasonable accommodation under ADA).  That
note made no mention of accommodations that might have been
necessary for Ellis to perform her job but defendants have
provided no evidence to suggest that plaintiff's expected
request for accommodation would have been unreasonable.  The
defendant has therefore failed to show, as required at the
summary judgment phase, that NAPS is entitled to judgment on
this issue as a matter of law.

Defendant's reliance upon the failure of Ellis to respond
to its offer of renewal to prove that she did not suffer adverse
action is unwarranted.  Ellis was terminated well in advance of
NAPS' offer to rescind the non-renewal notice.  As described
above, the negotiations that occurred between the parties after
the non-renewal notice was sent were about her reinstatement,

not her initial termination.  Ellis' failure to communicate with NAPS after her termination is therefore irrelevant to the issue at hand and does not substantively refute her claim of discrimination.

### ORDER

For the foregoing reasons, the motion of defendant NAPS for summary judgment (Docket No. 28) is, with respect to the failure to accommodate claim, **ALLOWED**, but is otherwise **DENIED**.

**So ordered.**

                                        /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated October 29, 2021

- 14 -